O. W. CHILTON AND S. E. JUDEN, Partners, Doing Business Under the Style and Firm Name of THE DEMOCRAT-ARGUS, Appellants, v. PEMISCOT COUNTY.—50 S. W. (2d) 645.

Division One, May 27, 1932.

*Von Mayes* for appellant.

*O. E. Hooker* and *McKay & Peal* for respondent.

FERGUSON, C.—The plaintiffs (appellants here) are engaged, as partners, in a printing business in Pemiscot County publishing a newspaper of general circulation known as ''The Democrat-Argus.''

They brought this suit against Pemiscot County seeking a judgment against the county for printer's fees alleged to be due them for publication in their newspaper of sheriff's notices of sale under special execution on judgments in a number of suits for delinquent real estate taxes. The defendant demurred to the petition on the ground that "the petition wholly fails to state facts sufficient to constitute any cause of action against the defendant." The demurrer was sustained, plaintiff declined to plead further and judgment was entered dismissing the petition from which judgment plaintiff appealed.

The petition alleges that, "during the years 1928 and 1927, and prior thereto" the collector of revenue of Pemiscot County "as directed by law, instituted in the circuit court of said county certain and divers suits for delinquent taxes due said county;" that, "the style and numbers of such cases" are set out in an "itemized statement herewith filed;" that, "judgments in said suits were obtained" and "special executions were duly issued and delivered" to the sheriff of that county who "duly levied thereunder upon the lands described therein;" that the sheriff "according to law caused notices of sale to be published" in the newspaper published by plaintiffs and said notices were accepted and published therein "in the manner and for the time required by law;" that "thereafter plaintiffs were paid in part for the publication of said notices, as shown by the credits given in said itemized statement," but the balance due has not been paid; that the "prices charged in each case set out in the itemized statement" were reasonable and "not in excess of the statutory rate;" that "plaintiffs presented to the county court of said county their demand for the unpaid portion of their said claim," payment of same was refused and the "balance now due and unpaid to plaintiffs . . . is $1746.49" and "by reason of the foregoing facts and the law, defendant is liable to pay plaintiff a reasonable compensation for publishing said notices."

Appellants rely upon the provisions of Section 13771, Revised Statutes 1929. Said section reads: "When any notice or advertisement relating to any cause, matter or thing in any court of record shall be required by law or the order of any court to be published, the same, when duly published, shall be paid for by the party at whose instance it was published, which payment, or so much thereof as shall be deemed reasonable, may be taxed as other costs, or otherwise allowed by the proper courts, in the course of the proceedings to which such advertisement relates." It is appellants' contention that when they published the notices of sale, which the sheriff caused to be published in their newspaper, in the course of proceedings by the county collector to enforce the collection of delinquent real estate taxes, the county became primarily liable to

them for the payment of their charges therefor and that while under the provisions of the statutes printer's fees for such publications are taxable as costs in a tax suit appellants cannot be required to look solely to the proceds of the sale, or a *pro rata* share thereof, for their compensation. Section 13771 is applicable to the publication of notices or advertisements made in ordinary civil actions between individuals but in Section 9969 of Article 9, Chapter 59, Revised Statutes 1929, which we hereinafter set out and discuss, we find a special statutory provision applying specifically to actions brought to enforce the lien of the State upon lands against which taxes are delinquent. Said Article 9 of Chapter 59 prescribes the method and manner of enforcing the State's paramount lien upon land on which taxes have become delinquent. The suits in which the sale notices were published were brought under the provisions of this article. Such suits are "prosecuted in the name of the State of Missouri, at the relation and to the use of the collector" (Section 9953, R. S. 1929) and the State is the real party in interest. [State ex rel. v. Sanford, 127 Mo. 368, 30 S. W. 112. █ A general or personal judgment cannot be rendered in an action against the landowner for taxes against his land. The judgment is special, against the land alone, constitutes a first lien thereon and "a special *fieri facias*" issues which is executed "as in other cases of special judgment and execution." [Sec. 9956, R. S. 1929; Neenan v. City of St. Joseph, 126 Mo. 89, 28 S. W. 963; State ex rel. Hayes v. Snyder, 139 Mo. 549, 41 S. W. 216.] █ Section 9969 of said article provides for the allowance of fees "for services rendered under the provisions of this article," first specifying the fees to be paid to the collector and county clerk and then reads: "To the circuit clerk, . . . sheriff and printer, such fees as are allowed by law for like services in civil cases which shall be taxed as costs in the case: *Provided, that in no case shall the state, county or city be liable for any such costs, nor shall the county court or state auditor allow any claim for any costs incurred by the provisions of this article."* (Italics ours.) By this statutory provision an exception is made, in favor of the State and county, to the general rule that each party litigant is primarily liable for the costs he incurs. In State ex rel. v. Wilson 174 Mo. 505, 74 S. W. 636, it is said the purpose of the provision of the foregoing statute "that in no case shall the state, county or city be liable for any such costs, nor shall the county court or State Auditor allow any claims for any costs incurred by the provisions of this chapter" is "to bring the State within the exception to the general rule that parties asserting a claim in court are liable for at least the cost that they incur" and that "the State (by such statutory provision) is exempted from the primary liability for costs it incurs" in such tax proceedings. All costs incurred in a proceeding to

enforce the lien of the State for real estate taxes, including fees of the printer for the publication of notices and advertisements, are a part of the judgment and the judgment being special is enforceable solely in the manner we have pointed out, that is by sale, under special execution of the land described in the judgment and against which the State's lien is therein declared. The proceeds of the sale must be first applied to the payment of the costs and the State may not share in or apply any of the proceeds to the payment of taxes and interest until the costs, so provided for by statute, are paid. [State ex rel. v. Wilson, supra.] It appears that the proceeds of the sales made in the tax suits listed in appellants' itemized statement filed with and by reference made a part of their petition herein were so applied and a *pro rata* part thereof paid to and received by appellants and credited by them upon the publication fee in each ,suit. It is for the aggregate balance remaining after these credits were made that they bring this suit. The special provisions of Section 9969 applicable to suits to enforce the lien of the State for real estate taxes prevail over the general provisions of Section 13771, supra, upon which appellants rely, and specifically exempting the State and county from liability or any claim for any costs, including printer's fees, incurred in such proceedings, make an exception in favor of the State and county to the general provisions of Section 13771. Section 9969 provides for the payment of fees for printing notices published in a proceeding to collect delinquent real estate taxes as one item of the costs in the case. No other method for the payment thereof is made by statute and in plain unambiguous and positive language the nonliability of the State and county for any of the costs of such a proceeding is declared.

Appellants' petition, in a separate paragraph following the allegations stating their claim or cause of action, the substance of which we have set out, states that if the effect of said Section 9969 is, by legislative act, to deprive the printer of a right to look to the county for his compensation for printing sale notices in tax proceedings then such section is unconstitutional "for the reason said section deprives plaintiffs of their property without due process of law." The demurrer to the petition did not of course admit the correctness of this conclusion of law. As to this contention, which appellant makes here, we think it is sufficient to observe that the statutes nowhere undertake to compel a printer to accept and publish the notices and look to the proceeds of the tax sale for his remuneration. It was entirely optional with appellants whether they published the notices on the terms and conditions prescribed by statute for the payment of fees for such publications and appellants must be held to have voluntarily accepted and published the notices with full knowledge of and subject to the statutory provisions prescribing

a sole and exclusive method of payment therefor and specifically exempting the State and county from any liability. In publishing notices and advertisements in the course of a proceeding to enforce the State's lien for real estate taxes the printer does so in contemplation of the terms of the statute and is thereby restricted to the proceeds of the sale for the payment of his fees.

The judgment of the trial court is affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.